UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOARD OF TRUSTEES OF THE
UPPER PENINSULA PLUMBERS
AND PIPEFITTERS' PENSION FUND,

    Plaintiff,

v.

JIM BARIL PLUMBING & HEATING,
INC., and BARIL PROPERTIES, LLC,

    Defendants.
_____/

CASE NO. 1:12-CV-1302

HON. ROBERT J. JONKER

## **OPINION**

This matter is before the Court on Defendant Baril Properties, LLC's Motion for Summary Judgment (docket ## 21, 24). The Court has heard oral argument on the motion; thoroughly reviewed the motion papers, including but not limited to the parties' supplemental briefing; and carefully considered the applicable law. The motion is ready for decision.

### **Background**

The parties do not dispute the primary facts in this case. Jim and Evelyn Baril, a married couple, incorporated Defendant Jim Baril Plumbing & Heating, Inc. ("Baril Plumbing") in 1979. (J. Baril dep. at 4.) Baril Plumbing is in the business of commercial plumbing. (*Id.*) Baril Plumbing entered a contract with the Upper Peninsula Plumbers and Pipefitters and remitted contributions to the Upper Peninsula Plumbers' & Pipefitters' Pension Fund (the "Fund") for years under a collective bargaining agreement. In March 2010, Baril Plumbing terminated its union contract and withdrew from the Fund. Baril Plumbing ceased contributing to the Fund. The Fund notified Baril Plumbing

of a claim against Baril Plumbing for withdrawal liability in the amount of $995,638.00. (J. Baril dep. at 7-8.) Baril Plumbing made two quarterly payments on this liability to the Fund and then stopped making payments. (*Id.*) Baril Plumbing does not appear to dispute its liability to the Fund for its withdrawal from the Fund. (*Id.* at 7.)

Defendants maintain, and Plaintiff accepts for the purpose of this motion, that Baril Plumbing's ownership structure is as follows:

*     James L. Baril as trustee for the James L. Baril Revocable Marital Trust Dated November 9, 1999, as Amended and Restated on January 27, 2009, owns 5675 shares, a 29.87 % interest.

*     Evelyn M. Baril as Trustee for the Evelyn M. Baril Revocable Marital Trust Dated November 9, 1999, as Amended and Restated on January 27, 2009, owns 6775 shares, a 35.67% interest.

*     Lance J. Baril owns 3275 shares, a 17.23% interest.

*     Steven J. Baril owns 3275 shares, a 17.23% interest.[1]

(*Id.* at ¶ 7.)

Baril Properties, LLC ("Properties") was organized in 2009. (docket # 25.) Properties owns real property located at 2759 Ashmun, Sault Ste. Marie, Michigan (the "Ashmun Property"). (J. Baril aff., docket # 25-1, at ¶ 3.) Baril Plumbing operates from the Ashmun Property and pays rent to Properties. (*Id.*) Originally, Mr. and Mrs. Baril each held a 50% membership interest in Properties. (*Id.* at ¶ 4.) Mrs. Baril later assigned her 50% membership interest to the Evelyn M.

---

[1] Lance Baril and Steven Baril are the sons of Jim and Evelyn Baril.

Baril Revocable Marital Trust dated November 9, 1999, as Amended and Restated on January 27, 2009. (*Id.* at ¶ 5.)

The Fund alleges that Properties is under common control with Baril Plumbing under the applicable statutory and regulatory scheme and therefore bears joint and several liability to the Fund. Defendants disagree, contending that Baril Plumbing and Properties are not under common control and that Properties therefore has no withdrawal liability to the Fund. The parties premise their positions on competing interpretations of applicable regulations.

## Legal Standards and Analysis

*1.     Statutory and Regulatory Framework*

Congress enacted the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 101-1371 ("ERISA") to ensure, among other things, that "if a worker has been promised a defined pension benefit upon retirement – and if he has fulfilled whatever conditions are required to obtain a vested benefit – he actually will receive it." *Nachman Corp. v. Pension Ben. Guar. Corp.,* 446 U.S. 359, 375 (1980). Under ERISA, as amended by the Multi-Employer Pension Plan Amendment Act of 1980 ("MMPA"), an employer who ceases to contribute to a multi-employer pension fund is liable for withdrawal liability – the employer's proportionate share of "unfunded vested benefits." 29 U.S.C. § 1381. The overriding "purpose of the Multiemployer Pension Plan Amendments is to prevent the dissipation of assets required to secure vested pension benefits." *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1374 (7th Cir. 1992).

Under the MMPA, "[a]ll businesses under common control are treated as a single employer and are jointly and severally liable for such payment in the event of withdrawal." *Central States Southeast and Southwest Areas Pension Fund v. Chatham Properties*, 929 F.2d 260, 262 (6th Cir.

1991).  In this context, "common control" has the meaning provided in section 414(c) of the Internal Revenue Code, 26 U.S.C. § 414(c).  The core dispute between the parties in this case is whether Baril Plumbing and Properties are under "common control" and therefore jointly and severally liable for Baril Plumbing's withdrawal from the Fund.  And even more narrowly, the dispute focuses precisely on the single issue of whether and how the attribution rules apply to the case.

### A. The Meaning of "Common Control"

Rules for determining ownership under 26 U.S.C. § 414(c) appear at 26 C.F.R. § 1.414(c) 1-4.  These rules provide that the term "two or more trades or businesses under common control" means, among other things, "a 'brother-sister group of trades or businesses under common control' as defined in paragraph (c) of this section."  26 C.F.R. § 1.414(c)-2(a).

Paragraph (c) defines a "brother-sister group of trades or businesses under common control" as

> two or more organizations conducting trades or businesses if (i) the same five or fewer persons who are individuals, estates, or trusts own (directly and with the application of § 1.414(c)-4) a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.  The five or fewer persons whose ownership is considered for purposes of the controlling interest requirement for each organization must be the same persons whose ownership is considered for purposes of the effective control requirement.

26 C.F.R. § 1.414(c)-2(c).  In short, a finding of "common control" requires satisfaction of both a "controlling interest" requirement, and a separate "effective control" requirement.  To satisfy the "controlling interest" requirement, the same five or fewer persons must have at least an 80% ownership interest in each company.  *See U.S. v. Vogel Fertilizer Co.*, 455 U.S. 16, 21-22 (1982).

To satisfy the "effective control" test, the same five or fewer persons must have an ownership interest of more than 50% in each company. *See id.*; 26 C.F.R. 1.414(c)-2(c)(2).

*B. Attribution Rules*

Rules governing constructive ownership appear in 26 C.F.R. 1.414(c)-4(b). These rules are critical to meaningful application of the "common control" tests. They prevent parties from avoiding the bite of the MMPA by artificially manipulating technical ownership interests. The goal of the rules is to focus on the substance of control, not simply the form of ownership.

The attribution rules provide, among other things, the following:

1. Attribution from Estates and Trusts

An interest in an organization (hereinafter called an 'organization interest') owned, directly or indirectly, by or for an estate or trust shall be considered as owned by any beneficiary of such estate or trust who has an actuarial interest of 5 percent or more in such organization interest, to the extent of such actuarial interest . . . . An interest owned, directly or indirectly, by or for any portion of a trust of which a person is considered the owner under subpart E, part I, subchapter J of the Code (relating to grantors and others treated as substantial owners) is considered as owned by such person.

26 C.F.R. 1.414(c)-4(b)(3). It is undisputed that the Barils' Revocable Trusts fall within the grantor trust category. Accordingly, the attribution rule would attribute ownership of the Evelyn Baril Revocable Trust to Evelyn Baril, and ownership of the Jim Baril Revocable Trust to Jim Baril.

2. Attribution from Spouse

Subject to exceptions not applicable in this case, the rules provide that "an individual shall be considered to own an interest owned, directly or indirectly, by or for his or her spouse." 26 C.F.R. 1.414(c)-4(b)(5). Under this rule, Jim Baril's ownership interests would be attributable to Evelyn Baril, and Evelyn Baril's ownership interests to Jim Baril.

5

### 3. Attribution from Adult Children

> If an individual is in effective control (within the meaning of § 1.414(c)-2(c)(2), directly and with the application of the rules of this paragraph [the attribution rules] without regard to this subdivision, of an organization, then such individual shall be considered to own an interest in such organization owned, directly or indirectly, by or for the individual's . . . children who have attained the age of 21 years.

26 C.F.R. 1.414(c)-4(b)(6)(ii). Evelyn Baril and Jim Baril own over 50% of Baril Plumbing and therefore have "effective control" over Baril Plumbing. Accordingly, the interests of their adult children, Lance Baril (17.23%) and Steve Baril (17.23%), are attributed to Jim Baril and Evelyn Baril. With this attribution, Jim Baril and Evelyn Baril would have over 80% ownership of Baril Plumbing, and therefore have a "controlling interest."

### *C. Application of Attribution Rules to this Case*

Using the most natural application of the attribution rules, Properties and Baril Plumbing are under common control because Jim and Evelyn Baril have a controlling interest in and effective control of both entities. Jim and Evelyn Baril have both "effective control" (more than 50%) of, and a "controlling interest" (at least 80%) in, Properties because they own 100% of it directly or through revocable trusts. They also have "effective control" (more than 50%) of Baril Plumbing through revocable trusts holding a combined 65.54% of the ownership. Jim and Evelyn Baril also meet the "controlling interest" (at least 80%) test for Baril Plumbing when the 34.46% holdings of their adult children is attributed to them. Because Jim and Evelyn Baril meet both tests, Baril Plumbing and Properties are under "common control," and Properties is liable for the MMPA liability of Plumbing.

Defendants admit this but maintain that Baril Plumbing and Baril Properties are not a brother-sister control group because, according to Defendants, they do not satisfy the requirement that the "five or fewer persons whose ownership is considered for purposes of the controlling interest

6

requirement for each organization must be the same persons whose ownership is considered for purpose of the effective control requirement." 26 C.F.R. § 1.414(c)-2(c). In other words, Defendants claim it is necessary to read and apply the attribution rules themselves to the same five or fewer people. Because the two adult children have interests only in Baril Plumbing and not in Properties, Defendants claim their interests must be excluded from consideration. But this reading defeats the whole purpose of attribution rules in the first place: namely, to determine on a substance-over-form basis who is really able to call the shots. The question is whether the same five or fewer persons have the "controlling interest" and "effective control" after attribution; not whether the same five or fewer people hold interests subject to attribution.

Defendants point out that if the attribution requirements apply throughout the analysis, it is almost impossible for the principal owners of the withdrawing employer to maintain any sort of business – even a completely separate type of business – that would not bear withdrawal liability under a brother-sister theory. That is true enough, but it appears to be exactly what Congress had in mind. Defendants present no persuasive authority for this position. To the contrary, there is ample authority that Congress intended through the MMPA to provide broad protection to workers' vested pension benefits. Defendants' reliance on a Supreme Court case that addressed whether two companies satisfied the "controlling interest" test and the "effective control" test, *U.S. v. Vogel Fertilizer*, 455 U.S. 16 (1981), is unpersuasive. That case is easily distinguishable, because even after applying the attribution rules, the same group of people did not have the required ownership levels in both companies. Here, after applying attribution, Jim and Evelyn Baril have the required ownership levels in both companies.

**Conclusion**

The Court concludes that the attribution requirements apply to the entire ownership analysis under 26 C.F.R. § 1.414(c)-2(c). With the application of the attribution requirements, Jim and Evelyn Baril own 100% of each of Baril Plumbing and Properties, and Baril Plumbing and Properties satisfy the definition of a brother-sister control group. Therefore, Properties is not entitled to summary judgment on its theory that it is not part of a control group that includes Baril Plumbing. To the contrary, Properties bears joint and several liability for withdrawal.

**ACCORDINGLY, IT IS ORDERED**:

Defendant Baril Properties, LLC's Motion for Summary Judgment (docket ## 21, 24) is **DENIED**.

Dated:     February 20, 2014           /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       UNITED STATES DISTRICT JUDGE